REK:sk
AO 91 (Rev. 11/11) Criminal Complaint

2025R00515

# UNITED STATES DISTRICT COURT
for the
District of Minnesota

UNITED STATES OF AMERICA

v.

RAYMOND CHRISTIAN GARCIA,

Case No. 25-mj-634 (DTS)

4:25-mj-0571

## CRIMINAL COMPLAINT

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief.

On or about September 19, 2025, RAYMOND CHRISTIAN GARCIA did unlawfully seize, confine, inveigle, decoy, kidnap, abduct, or carry away and hold for ransom or reward or otherwise a person, when the offender traveled in interstate or foreign commerce or uses the mail or any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense, all in violation of Title 18, United States Code, Section 1201(a)(1).

I further state that I am an FBI Special Agent and that this complaint is based on the following facts:

SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof:   ☒Yes  ☐ No

*Complainant's signature*

SUBSCRIBED and SWORN before me
by reliable electronic means (FaceTime/Zoom and
email) pursuant to Fed. R. Crim. P. 41(d)(3).

Jamie Butcher Nestor, Special Agent
Federal Bureau of Investigations (FBI)
*Printed name and title*

Date: Sept. 24, 2025

*Judge's Signature*

The Honorable David T. Schultz
United States Magistrate Judge
*Printed Name and Title*

City and State: Minneapolis, MN

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RAYMOND CHRISTIAN GARCIA | Case No. 25-mj-634 (DTS) |

### AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Jamie Butcher Nestor, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Federal Bureau of Investigation (FBI) assigned to the FBI's Minneapolis Field Office. I have been a Special Agent with the FBI since 2015. I am currently assigned to a violent crime squad and am responsible for the investigation of violent crimes against children. During my tenure as an agent, I have investigated crimes against children, sextortion, complex cyber intrusions, cyber-crime, cyber enabled fraud, financial fraud, wire fraud, access device fraud and other crimes. In addition to general law enforcement training and experience in the areas of investigations, interview and interrogation techniques, surveillance, arrest procedures, search and seizure, I have additional experience and training in the acquisition, processing and exploitation of digital evidence. As a Federal

Agent, I am authorized to investigate violations of laws of the United States, and to execute warrants issued under the authority of the United States.

2. Based on my training and experience, and the facts as set forth in this affidavit, there is probable cause to believe that the offense of Kidnapping, in violation of 18 U.S.C. § 1201(a)(1) has been committed by RAYMOND CHRISTIAN GARCIA, (hereinafter, RAYMOND).

3. The facts set forth in this affidavit come from my personal observations, my training and experience, evidence gathered pursuant to search warrants and information obtained from other law enforcement officers. Because this affidavit is submitted for the limited purpose of establishing probable cause to support the contemporaneously filed application, it does not include each and every fact known to me or to other investigators.

## PROBABLE CAUSE

4. On September 19, 2025, at approximately 4:45 pm, the Washington County Sheriff's Office Dispatch Center received a 911 call from an adult male who reported that he and his family had been victims of an armed robbery and kidnapping by two adult male suspects, during which they had been held hostage at gunpoint within their residence in Grant, Minnesota.

5. The 911 caller's family consisted of the caller, the caller's father, (hereinafter, Victim 1), and the caller's mother.

2

6. At around 7:45 that morning, Victim 1 was bringing his garbage can out to the street from inside the garage when the two males ran out from alongside the house's driveway, pointing an AR-15 style rifle and a shotgun at him. They quickly escorted him back into the garage, where they bound his hands with zip ties and then brought him inside the house.

7. After entering the house, the two males woke up Victim 1's wife and adult son, both at gunpoint, and then zip tied their hands and forced to lie on the floor of the upstairs bedroom.

8. One of the males, later determined to be RAYMOND CHRISTIAN GARCIA, held the wife and son in their residence for the following nine hours. He remained armed with the AR-15 style rifle for the duration. About 15 minutes prior to the son calling 911, RAYMOND exited the residence out the back door with the AR-15, heading toward the tree line. He returned to the residence shortly thereafter, without the AR-15, only to be observed running out the back door once again as Washington County Sheriff's Deputies responded to the scene following the son's 911 call. The wife and son remained zip tied until law enforcement arrived.

9. While the wife and son remained upstairs and bound, the male with the shotgun, later determined to be RAYMOND's brother, ISIAH ANGELO GARCIA (hereinafter, ISIAH), escorted Victim 1 around the

3

residence, where he forced Victim 1 at gunpoint to log into his cryptocurrency accounts. ISIAH demanded that Victim 1 transfer large amounts of cryptocurrency to an unknown cryptocurrency wallet that he had provided.

10. Victim 1 later reported to law enforcement that during the robbery, he observed both RAYMOND and ISIAH frequently making phone calls to an unknown third party via their cell phones. He observed that the third party appeared to be providing the information related to the cryptocurrency accounts and transfers. Through this third party, RAYMOND and ISIAH became aware at a certain point that Victim 1 had additional cryptocurrency funds that he had not yet provided. Victim 1 explained to RAYMOND and ISIAH that the remaining funds were on a hard drive style cryptocurrency wallet that was stored at their family cabin in Grand Rapids, Minnesota approximately three hours away.

11. Using Victim 1's truck, ISIAH drove Victim 1 to the cabin while RAYMOND continued to hold Victim 1's wife and son hostage at their home in Grant. At the cabin, Victim 1 transferred the remaining funds to ISIAH's provided cryptocurrency wallet before the two returned to Victim 1's residence.

12. In total, ISIAH forced Victim 1 to transfer $8,000,000 worth of cryptocurrency.

4

13. As Victim 1 and ISIAH were returning to the neighborhood later that afternoon, Victim 1's son placed his 911 call. Multiple squads responded, unknowingly passing Victim 1 and ISIAH as they pulled over to allow the emergency vehicles to pass. ISIAH turned the truck around, parked it nearby, and walked away toward a nearby middle school parking lot. He disposed of the shotgun in a nearby field, where it was later recovered by law enforcement.

14. A responding deputy arriving in the area observed a white sedan with California registration 9GPB611 leaving the middle school parking lot. However, law enforcement did not transmit information about a suspicious vehicle in the neighborhood until after the California vehicle had departed the area.

15. After law enforcement arrived and searched the area around Victim 1's residence, they located a dark, soft-sided suitcase in the tree line behind the residence. Inside were miscellaneous clothing items, beverages and an AR-15 rifle with ammunition, consistent with these items being for ISIAH and RAYMOND's use after completing the robbery, along with a disassembled AR-15 rifle. They also found a Wendy's receipt from the Roseville area on September 17, 2025, and tracked that to the suspects buying food and checking into a Motel 6 in the area.

5

16. Using this information, law enforcement took steps to identify the two suspects involved in the kidnapping. A neighbor interviewed by law enforcement reported observing a white sedan with out of state plates in the cul-de-sac in front of Victim 1's residence at approximately 6:50 am that morning.

17. Law enforcement discovered that on or about September 16, 2025, a male named ISIAH ANGELO GARCIA rented a white 2023 Chevrolet Malibu with California plates from an Enterprise Rent-a-Car center near Houston, Texas. The identification and payment information listed ISIAH as the renter and his address as 21126 Willie Scott Terrace, Waller, TX 77484. Subsequent traffic cameras showed the vehicle in the area of ISIAH's residence in Waller.

18. On September 17, 2025, ISIAH arrived in the Roseville, Minnesota area with another male, driving the white Malibu. The same Malibu was observed on video surveillance going through a Wendy's drive-thru in the Roseville area and then going to a nearby Motel 6. Security footage from the Motel 6 showed the two males exiting the vehicle with Wendy's bags. Both were seen on video surveillance at the Motel 6 between September 17 and September 19, wearing dark cargo pants, hooded sweatshirts, hats, and medical-type masks while entering and exiting the hotel. Initially, the males

6

were carrying dark colored backpacks with distinctive images and printing on the packs. One of the males is observed wearing fitted blue jeans on occasion tucked into grayish colored mud boots. They were also observed wearing bright orange traffic safety vests, one with a dark colored TSC Traffic Safety logo on the back.

19. The males were given two different rooms under two different reservations at the Motel 6 due to the hotel having many bookings. Both reservations, as well as the credit card used to pay, were in the name of RAYMOND Garcia, with the same home address as ISIAH. The second night, ISIAH and RAYMOND used the name "Jack Garza" to rent the room but again paid for it using RAYMOND's credit card.

20. On the morning of September 19, at approximately 5:45 am, RAYMOND and ISIAH were observed putting a suitcase in the back seat of the Malibu and leaving the Motel 6.

21. Shortly after law enforcement responded to Victim 1's residence that afternoon, the white Malibu was observed on the Motel 6 security video returning to the parking lot with only one of the two males inside. He had changed clothing to dark-colored shorts and a light-colored sweatshirt. The male went to the motel room but was unable to gain access because checkout time had passed. The male was observed looking into the motel room window,

7

as if he were looking for someone. He then left the motel alone in the white Malibu.

22. On September 20 at approximately 1:30 pm, the Malibu's vehicle registration was queried for unknown reasons by a patrol car in Oklahoma. This indicated the vehicle had left Minnesota and was driving to Texas.

23. Around the same time as the white Malibu was arriving at the Motel 6, law enforcement observed another male matching the suspects' description on foot on the walking path north of Victim 1's residence. The male fled into the woods as officers approached and was not located that night. The following morning, law enforcement received two different crime reports from the area of Victim 1's residence. The first reported a shed had been broken into, and the second reported a brown Honda Accord being stolen. Both locations were just off a walking path that also ran along the back of Victim 1's residence. At approximately 5:30 pm on September 19, the brown Accord was registered on a traffic camera in the Minneapolis metro area.

24. On September 21, 2025, local law enforcement in Waller County, Texas observed the white Malibu parked in the yard of 21126 Willie Scott Terrace in Waller, Texas.

25. After returning to Texas, RAYMOND reported the AR-15 firearm that was used in the robbery as stolen with local police.

8

26. On September 22, 2025, Waller County Sheriff's deputies served a search warrant on ISIAH and RAYMOND's residence. When interviewed, their mother reported that both had "gone radio silent" for the previous several days.

27. During the search of the residence, officers seized numerous phones, computers, bags and clothing, along with gun cases. Several of the shirts located matched the clothing that RAYMOND was wearing at the Motel 6. Officers also located a firearm shipping box for an AR-15 rifle with a serial number listed on it matching the AR-15 that was recovered near Victim 1's residence in Minnesota. No cryptocurrency was found.

28. Following the search, both RAYMOND and ISIAH were arrested on a 48-hour investigative detainment and taken into local custody.

29. On September 23, 2025, both RAYMOND and ISIAH were charged by complaint in Washington County, Minnesota with three counts of kidnapping with a firearm, one count of first-degree aggravated robbery, and three counts of first-degree burglary.

30. In a post-*Miranda* interview while in custody, ISIAH admitted to law enforcement that he and RAYMOND had driven to Minnesota and held Victim 1's family hostage at gunpoint using zip ties. He also admitted that he had driven Victim 1 to the family's cabin that day.

9

31.     Law enforcement also obtained GPS data from the white Malibu. They confirmed that it traveled to Minnesota from Texas between September 16 and 20. The data also showed that the car was near Victim 1's residence on September 19 and near the Motel 6 during the times it was also captured on surveillance video.

## CONCLUSION

32.     Based on the foregoing, I submit there is probable cause to believe that on or about September 19, 2025, RAYMOND CHRISTIAN GARCIA did unlawfully seize, confine, inveigle, decoy, kidnap, abduct, or carry away and hold for ransom or reward or otherwise a person, when the offender traveled in interstate or foreign commerce or uses the mail or any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense. Thus, there is probable cause to believe that RAYMOND CHRISTIAN GARCIA engaged in Kidnapping, in violation of 18 U.S.C. § 1201(a)(1). Accordingly, I request a warrant issue for the arrest of Raymond Garcia, that he may be brought before this Court. The foregoing is true to the best of my knowledge and belief.

Further your Affiant sayeth not.

*Jamie Nestor*

Special Agent Jamie Butcher Nestor
United States Department of Justice

10

Federal Bureau of Investigation

SUBSCRIBED and SWORN before me
by reliable electronic means (Zoom and
email) pursuant to Fed. R. Crim. P. 41(d)(3)
on September 24, 2025

_____
THE HONORABLE DAVID T. SCHULTZ
UNITED STATES MAGISTRATE JUDGE